THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>MANSION LIVE, LLC d/b/a MANSION LIVE, JASON PINKEY, and VICTOR MUNOZ MARQUEZ<br><br>Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, MANSION LIVE, LLC d/b/a MANSION LIVE ("Mansion Live"), JASON PINKEY, and VICTOR MUNOZ MARQUEZ, and alleges as follows:

### STATEMENT OF THE CASE

1. Scottsdale seeks a judicial declaration that the commercial general liability insurance policy that it issued to Mansion Live does not provide coverage, including a duty to defend or indemnify Mansion Live or Pinkey, against the underlying complaint by Marquez, encaptioned *Marquez v. Mansion Live, LLC d/b/a Mansion Live et al.,* Cir. Ct. Cook Cnty., IL., No. 2025 L 11469 ("Underlying Lawsuit"). In sum, the Underlying Lawsuit arises from a physical altercation that allegedly injured Marquez, such that the subject insurance policy's Total Assault and/or Battery Exclusion entirely precludes coverage for the Underlying Lawsuit.

### THE PARTIES

2. Plaintiff, Scottsdale is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3. Defendant, Mansion Live, is and was at all relevant times an Illinois limited liability

company. Its members are Anthony Quaranta and Nicholas Castaldo, each of whom is an Illinois citizen. Further, Quaranta is a resident of Cook County, IL, and Castaldo is a resident of DuPage County, IL.

4. Defendant Pinkey is a citizen of Illinois and a resident of Cook County, IL.

5. Defendant Marquez is a citizen of Illinois and is named in this action as a necessary party because of his status as a plaintiff in the Underlying Lawsuit.

## JURISDICTION AND VENUE

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Scottsdale, on the one hand, and Defendants, Mansion Live, Pinkey and Marquez, on the other hand; and (b) the amount in controversy with regard to the Underlying Lawsuit exceeds $75,000, as the Underlying Lawsuit seeks damages allegedly resulting from severe personal injury to Marquez. Further, Mansion Live seeks a defense paid for by Scottsdale in connection with the Underlying Lawsuit, which, alone, should exceed $75,000.

7. This Court may exercise personal jurisdiction over Mansion Live because it regularly transacts business in Illinois, is alleged to have engaged in tortious conduct in Illinois, and seeks insurance coverage, including a duty to defend, for a lawsuit pending in Illinois.

8. This Court may exercise personal jurisdiction over Marquez and Pinkey because they are citizens of Illinois.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Underlying Lawsuit occurred in this judicial district, the policy was issued in this district, and the Underlying Lawsuit is pending in Cook County, located in this district.

10. An actual justiciable controversy exists between Scottsdale, on the one hand, and Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

# THE SCOTTSDALE POLICY

11. Scottsdale issued to Mansion Live a commercial general liability insurance policy, No. CPS7912444, effective from December 15, 2023 to December 15, 2024 ("Policy"). A true and correct copy of the Policy is attached hereto and incorporated herein as **Exhibit A.**

12. The Policy includes the Commercial General Liability Coverage Form (CG 00 01 04 13), which provides, in pertinent part, as follows with respect to "bodily injury" liability (Coverage A):

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply….
>
> \* \* \*

13. The Policy includes a Total Assault and/or Battery Exclusion (GLS-623 10-21), which modifies the Commercial General Liability Coverage Form and provides:

> The following exclusion is added to the Policy:
>
> **A.** This insurance does not apply to "bodily injury," … medical payments, "damages" or "injury" directly or indirectly arising out of, caused by, or in any way related to:
>
> 1. Assault and/or battery committed by any insured, any "employee" of any insured, or any other person; or
>
> 2. The attempt or failure to suppress or prevent assault and/or battery by any person in **1.** above; or
>
> 3. Any attempt by any person to avoid, prevent, suppress or halt any actual or threatened assault and/or battery; or
>
> 4. The selling, serving or furnishing of alcoholic beverages which results or is alleged to have resulted in an assault and/or battery; or
>
> 5. A failure to render aid before, during, or after an assault and/or battery; or

      6. A failure to notify authorities or emergency personnel including, but not limited to, police and emergency medical technicians before, during, or after an assault and/or battery; or

      7. The negligent:

           a. Employment;
           b. Investigation;
           c. Supervision;
           d. Hiring;
           e. Training;
           f. Monitoring;
           g. Reporting to the proper authorities, or failure to so report; or
           h. Retention;

      of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1., 2., 3.** or **4.** above; or

      8. Any obligation to share damages with or repay someone else who must pay damages resulting from paragraphs **1.** through **7.** above; or

      9. Liability of others assumed by an insured under any contract or agreement, either oral or in writing.

**B.** This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the assault and/or battery.

**C.** This exclusion applies regardless of whether the perpetrator of the assault and/or battery was in a position of control, dominance or authority over the victim.

**D.** This exclusion applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.

**E.** This exclusion applies regardless of whether the assault and/or battery was committed using physical force, weapons, firearms, or any combination thereof.

**F.** With respect to this exclusion, "bodily injury" or "injury" includes mental injury or distress, disability, or sexual dysfunction.

**G.** We will have no duty to defend any "suit" against any insured seeking injury or damages as a consequence of any assault and/or battery.

\* \* \*

## UNDERLYING LAWSUIT

14. The Complaint in the Underlying Lawsuit ("Underlying Complaint") alleges that on

May 6, 2024, Marquez was a patron of the Mansion Live nightclub ("Nightclub") in Stone Park, Illinois. A true and correct copy of the Underlying Complaint is attached hereto and incorporated herein as **Exhibit B.**

15. The Nightclub was allegedly operated, maintained, controlled, possessed, and managed by Mansion Live, which employed persons to operate, maintain, control, possess and manage the Nightclub. These persons included security guards, such as Jason Pinkey, a defendant in the Underlying Lawsuit, who was allegedly an agent or employee of Mansion Live acting within the course and scope of his employment, agency, or master/servant relationship with Mansion Live.

16. The Underlying Complaint alleges that Mansion Live employed an inadequate number of individuals to work as security guards and/or bouncers to keep said premises safe.

17. On May 6, 2024, Pinkey is alleged to have violently and brutally physically assaulted Marquez by striking him, causing him to be thrown to the ground and become severely injured.

18. Mansion Live allegedly knew or should have known that it needed to create and implement a safety and security plan for its duly authorized agents and/or employees to follow to prevent the physical assault upon Marquez. The Underlying Complaint alleges that Mansion Live voluntarily undertook the responsibility of creating and implementing such a plan. However, Mansion Live allegedly breached its duty by negligently causing and permitting Marquez to be injured.

19. In Count I against Mansion Live, Marquez pleads that he was lawfully on the Nightclub premises, Mansion Live had a duty to protect and keep him safe, and to provide adequate security and surveillance.

20. Marquez alleges that, through Pinkey and other employees and agents, Mansion Live carelessly and negligently:

    a. Failed to provide an adequate amount of security guards to secure its nightclub;

    b. Failed to properly hire, train, and supervise its security guards;

    c. Failed to instruct its security guards of their obligations to protect its

        patrons;

    d.    Failed to properly train its security guards as to when to use force;

    e.    Failed to properly train its security guards as to when force should not be used and not to use excessive force;

    f.    Failed to provide an adequate amount of security to protect, secure, and keep the Plaintiff safe from harm, danger and injury;

    g.    Failed to interject their security guards into an altercation that occurred before it escalated into a violent physical assault;

    h.    Used an improper amount of force and/or excessive force against an innocent patron in an attempt to control an altercation that occurred;

    i.    Failed to implement and execute an adequate and proper safety and security plan/policies for its patrons, including but not limited to, the Plaintiff;

    j.    Failed to prevent the Plaintiff from being harmed and injured;

    k.    Failed to protect, secure, and keep the Plaintiff safe and free from foreseeable harm, danger and injury;

    l.    Failed to take proper steps to protect the Plaintiff and keep the Plaintiff safe and free from said foreseeable harm, danger, and injury;

    m.    Failed to provide the Plaintiff with a safe means of ingress and egress to its nightclub.

21. Count I further alleges that it was reasonably foreseeable to Mansion Live that this type of violent criminal attack would occur based on prior incidents of excessive force by Mansion Live's security guards. As a direct and proximate result of Mansion Live's negligence, Marquez sustained injuries and damages.

22. In Count III against Pinkey, Marquez pleads that Pinkey had or voluntarily undertook a duty to protect, secure and keep Marquez safe and free from danger, harm and injury at the Nightclub.

23. Count III alleges that Pinkey committed the following careless and negligent acts:

    a.    Used an improper amount of force against an innocent patron in an attempt to control an altercation that occurred;

      b.      Used excessive force against an innocent patron;

      c.      Failed to implement and execute an adequate and proper safety and security plan/policies for its patrons, including but not limited to, the Plaintiff;

      d.      Failed to prevent the Plaintiff from being harmed and injured;

      e.      Failed to protect, secure, and keep the Plaintiff safe and free from foreseeable harm, danger and injury;

      f.      Failed to take proper steps to protect the Plaintiff and keep the Plaintiff safe and free from said foreseeable harm, danger, and injury;

      g.      Failed to provide the Plaintiff with a safe means of ingress and egress to its nightclub.

24. Count III further alleges that as a direct and proximate result of Pinkey's negligence, Marquez sustained injuries and damages.

## COUNT I – NO DUTY TO DEFEND

25. Scottsdale incorporates by reference paragraphs 1-24 above as if fully stated herein.

26. The Policy is subject to the Total Assault and/or Battery Exclusion, which provides that the Policy does not provide coverage for "bodily injury," medical payments, "damages," or "injury" directly or indirectly arising out of any assault and/or battery committed by any person.

27. Counts I and III of the Underlying Complaint against Mansion Live and Pinkey are entirely premised upon the alleged battery and/or assault upon Marquez, when he was struck, causing him to be thrown to the ground and to become severely injured.

28. As a result, the Total Assault and/or Battery Exclusion, which further applies to the failure to suppress or prevent an assault and/or battery, completely precludes all coverage under the Policy for the claims asserted against Mansion Live and Pinkey in the Underlying Complaint.

29. Hence, Scottsdale has no duty to defend Mansion Live or Pinkey in the Underlying Lawsuit.

## COUNT II – NO DUTY TO INDEMNIFY

30. Scottsdale incorporates by reference paragraphs 1-29 above as if fully stated herein.

31. Because neither Mansion Live nor Pinkey may be liable under any theory in the Underlying Lawsuit that could potentially fall within the coverage of the Policy, by virtue of the Total Assault and/or Battery Exclusion, Scottsdale necessarily has no duty to indemnify Mansion Live or Pinkey against any adverse judgment or settlement in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Court to declare and adjudge the controversy as follows:

A. Scottsdale has no duty to defend Mansion Live in the Underlying Lawsuit;

B. Scottsdale has no duty to indemnify Mansion Live in the Underlying Lawsuit;

C. Scottsdale has no duty to defend Pinkey in the Underlying Lawsuit;

D. Scottsdale has no duty to indemnify Pinkey in the Underlying Lawsuit; and

E. All other relief this Court deems just and equitable under the circumstances, including the award of costs.

DATED: December 11, 2025

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

/s/ *Jonathan L. Schwartz*
Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
Jason S. Callicoat (ARDC #6285863)
FREEMAN MATHIS & GARY LLP
33 N. Dearborn St., Suite 1430
Chicago, IL 60602
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com
jason.callicoat@fmglaw.com